IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | | |
|---|---|---|
| Daryl M. Thomas, | ) | C/A No.: 1:13-1294-RMG-SVH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| Carolyn W. Colvin, Acting | ) | |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This appeal from a denial of social security benefits is before the court for a Report and Recommendation ("Report") pursuant to Local Civil Rule 73.02(B)(2)(a) (D.S.C.). Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3) to obtain judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his claim for Disability Insurance Benefits ("DIB"). The two issues before the court are whether the Commissioner's findings of fact are supported by substantial evidence and whether she applied the proper legal standards. For the reasons that follow, the undersigned recommends that the Commissioner's decision be affirmed.

I.    Relevant Background

A.    Procedural History

On October 29, 2010, Plaintiff filed an application for DIB in which he alleged his disability began on December 31, 2008. Tr. at 141–44. His application was denied initially and upon reconsideration. Tr. at 81–82. On February 15, 2012, Plaintiff had a

hearing before Administrative Law Judge ("ALJ") Augustus C. Martin.  Tr. at 36–79 (Hr'g Tr.).  The ALJ issued an unfavorable decision on February 28, 2012, finding that Plaintiff was not disabled within the meaning of the Act.  Tr. at 20–31.  Subsequently, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner for purposes of judicial review.  Tr. at 1–3. Thereafter, Plaintiff brought this action seeking judicial review of the Commissioner's decision in a complaint filed on May 13, 2013.  [Entry #1].

B.    Plaintiff's Background and Medical History

1.    Background

Plaintiff was 40 years old at the time of the hearing.  Tr. at 36, 41.  He completed high school and two years of college.  Tr. at 43.  His past relevant work ("PRW") was as a computer repairer, electronics repairer, and scales repairer.  Tr. at 70–71.  He alleges he has been unable to work since December 31, 2008.  Tr. at 141.

2.    Medical History

a.    Treatment Records

In February 2009, an MRI revealed that Plaintiff had a left-sided disc bulge at L4–L5 of his lumbar spine as well as some facet hypertrophy at L4–L5 bilaterally.  Tr. at 319, 382.  He complained of lower back pain that radiated into his legs and numbness in his hands and feet.  Tr. at 319.  Jonathan Gardner, M.D., opined that Plaintiff's weight was the primary factor in his chronic low back pain.  *Id.*

On March 18, 2009, Plaintiff underwent lumbar disk compression with nucleoplasty.  Tr. at 260.  His records indicate he had a history of drug-seeking behavior

and was discharged previously for breaking his pain medication contract. Tr. at 261. Two days after his surgery, Plaintiff was hospitalized overnight after dramatic crying and screaming and essentially refusing to leave the hospital. Tr. at 311. Plaintiff asked to be "knocked out for a few days" and was disappointed he had been discharged from the hospital so quickly. *Id.* Plaintiff's mother informed his primary care physician, Fred Michael, M.D., that most physicians think that her son is a drug addict. *Id.* Dr. Michael noted that there was clearly a complex dynamic between mother and son that was not likely to be conducive to improvement of Plaintiff's condition. *Id.*

Plaintiff returned to Dr. Michael on June 16, 2009, complaining of chronic low back pain. Tr. at 310. The doctor noted that Plaintiff had morbid obesity and severe depression. *Id.* Plaintiff was referred to an orthopedist for complaints regarding ingrown toenails. *Id.*

On October 12, 2009, Tyler Wind, M.D., opined that Plaintiff might have cubital tunnel syndrome in his left arm and mild carpal tunnel syndrome bilaterally, but that he demonstrated good strength in his left hand. Tr. at 301. That same day, electrodiagnostic testing indicated that Plaintiff had neuropathy in his left elbow, and possibly had mild carpal tunnel syndrome bilaterally. Tr. at 258.

On December 9, 2009, Plaintiff presented to Dr. Michael for anxiety related to undergoing orthopedic surgery. Tr. at 296. Plaintiff stated that he believed he had immunity to most medications, but Dr. Michael indicated that he thought a combination of anxiety, morbid obesity, and chronic opiate use explained why Plaintiff needed larger doses of medication. Tr. at 296.

On June 2, 2010, Dr. Michael saw Plaintiff for follow up of his major depressive disorder and chronic low back pain. Tr. at 287. The doctor noted that Plaintiff's depression rendered him essentially catatonic at times and that his lack of insurance had kept him from seeing a psychiatrist. *Id.* Plaintiff reported that Morphine did not help his back pain and requested a different medication. *Id.* Dr. Michael noted that interventions to date had not significantly improved Plaintiff's back pain and that he was morbidly obese. *Id.*

On September 15, 2010, Dr. Michael noted that Plaintiff was morbidly obese and had chronic low back pain, anxiety, diabetes, hypertension, obstructive sleep apnea, and depression that made him essentially catatonic at times. Tr. at 282. Dr. Michael further noted that Plaintiff had some work at home as a computer technician. *Id.* Dr. Michael indicated that Plaintiff refused to accept that his size and his chronic use of pain medication were the reasons why he was resistant to pain medication. *Id.*

On March 23, 2011, Dr. Michael noted that he was unable to offer Plaintiff any help with his quest for disability because Dr. Michael believed that Plaintiff would likely be capable of work if he had adequate improvement in his psychiatric issues. Tr. at 458. Dr. Michael stated, however, that Plaintiff had no funding and had been unable to see a psychiatrist. *Id.*

Plaintiff returned to Dr. Michael on June 15, 2011, with concerns regarding his pain medication. Tr. at 455. He stated that Methadone only worked for four days. *Id.* Plaintiff reported using a CPAP machine at night. *Id.* Plaintiff's diagnoses included chronic back pain, morbid obesity, depression with vegetative features, and a likely

personality disorder. *Id.* Dr. Michael noted that Plaintiff was selectively noncompliant with therapies and that Plaintiff both told him that he needed disability because he could not work, but also that he had numerous and important computer clients. *Id.* Dr. Michael stated that Plaintiff's psychiatric issues impeded any progress in his medical issues. *Id.*

b.    Consultative Examinations

On January 19, 2011, E.G. Schleimer, Ph.D., conducted a consultative psychological examination of Plaintiff. Tr. at 422–23. Plaintiff demonstrated good memory, attention, and concentration, but his degree of depression was difficult to assess and his social judgment seemed problematic. *Id.* Dr. Schleimer diagnosed Plaintiff with personality disorder and dysthymic disorder and noted that Plaintiff should have medical care for weight loss. Tr. at 423. The doctor opined that Plaintiff had the ability and judgment to handle funds on his own behalf, may be unemployable due to physical problems, and might benefit from group therapy. *Id.*

c.    State Agency Assessments

On March 1, 2011, state-agency consultant Judith Vogelsang, D.O., opined that Plaintiff could lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk two to four hours in an eight-hour workday; and sit about six hours in an eight-hour workday. Tr. at 436–44. Dr. Vogelsang further opined that Plaintiff could do no direct overhead work bilaterally and no constant handling or fingering with his left hand, but had no right hand restrictions. Tr. at 440. Finally, the doctor stated that Plaintiff should avoid even moderate exposure to hazards. Tr. at 441. On August 10, 2011, a second medical consultant issued a similar opinion. Tr. at 466–73.

5

On February 17, 2011, Leif Leaf, Ph.D., a non-examining psychological consultant, opined that Plaintiff had dysthymic disorder; mild restriction of activities of daily living ("ADLs"); mild difficulty maintaining social functioning; mild difficulty maintaining concentration, persistence, and pace; and no episodes of decompensation. Tr. at 424–35.

On August 13, 2011, a second psychological consultant, Lisa Varner Ph.D., found that Plaintiff had attention deficit disorder, depressive disorder, dysthymic disorder, anxiety disorder, and personality disorder. Tr. at 474–81. Dr. Varner further opined that Plaintiff had mild restriction of ADLs; moderate difficulty in maintaining social functioning; moderate difficulty in maintaining concentration, persistence, and pace; and no episodes of decompensation. Tr. at 484. Dr. Varner further opined that Plaintiff was able to understand, remember, and carry out simple and detailed instructions; would perform best in situations that do not require ongoing interaction with the public; was aware of normal hazards and could take appropriate precautions. Tr. at 490.

C.    The Administrative Proceedings

1.    The Administrative Hearing

a.    Plaintiff's Testimony

At the hearing on February 28, 2012, Plaintiff testified that he lived with his mother, who did his laundry and drove him to the hearing. Tr. at 42. He stated that he drove occasionally and completed about two years of college. Tr. at 42–43. He said that his physical impairments included two bulging discs, loss of joints on his left hand, ulnar neuropathy, and carpal tunnel syndrome. Tr. at 51. He testified that he experienced back

6

pain and that his physical problems caused him to be unable to crawl, bend, or lift more than five or 10 pounds. Tr. at 46, 52–53. Plaintiff testified that he also suffered from depression. Tr. at 57. He stated that his medications caused him to have an upset stomach, diarrhea, dry mouth, and severe fatigue. Tr. at 56. He said that his medication did not work very well to relieve his symptoms and that lying down was the only thing that provided relief. Tr. at 57. He said he had trouble using a keyboard because of his carpal tunnel syndrome. Tr. at 63–64. He stated that he had problems with his attention and was told that he had attention deficit disorder. Tr. at 64. He said that approximately once a week, his depression caused him to be in a catatonic state. *Id.*

Plaintiff stated that on a regular day, he got up at noon. Tr. at 58. He said he then watched television or read and that he liked reading "Scientific America" and physics books. Tr. at 58. He testified that he went shopping every two weeks, had friends visit on a weekly basis, and attended church twice a month. Tr. at 61–62. He said that about eight times per month, he went to his church's family history center where his mother worked. Tr. at 62–63.

Plaintiff asserted that pain medications did not help him because he was missing a gene marker that would allow his body to break down the medication. Tr. at 66. As a result, he said that he received all of the adverse effects and none of the intended effects of the medications. *Id.*

b.    Vocational Expert Testimony

Vocational Expert ("VE") Carroll Hart Crawford reviewed the record and testified at the hearing. Tr. at 68. The VE categorized Plaintiff's PRW as a computer repairer as

sedentary, skilled work, but was heavy work as performed; as an electronics repairer as medium, skilled work; and as a scales repairer as medium, skilled work, but was heavy as performed.  Tr. at 70–71.  The ALJ described a hypothetical individual of Plaintiff's vocational profile who could perform sedentary work; not climb ladders, ropes, or scaffolds; occasionally do overhead reaching; and frequently finger and handle with the left hand.  Tr. at 71.  The ALJ further limited the hypothetical individual to avoiding concentrated exposure to extreme cold and all exposure to hazards; and performing simple, routine, repetitive tasks in a setting that does not require ongoing interaction with the public.  *Id.*  The ALJ stated that he knew the individual could not perform Plaintiff's PRW, but asked whether there were any other jobs in the region or national economy that the hypothetical person could perform.  *Id.*  The VE identified the unskilled, sedentary jobs of addresser, document preparer, and weight tester.  Tr. at 71–72.  The VE stated if the hypothetical individual was catatonic at times, could not pay attention to tasks on a sustained basis, had difficulty getting out of bed and moving, and missed more than two days of work per month, there would be no jobs available.  Tr. at 72.

Upon questioning by Plaintiff's counsel, the VE stated that the hypothetical individual could not perform the jobs identified if he was limited to occasional bilateral reaching in all directions.  Tr. at 72, 76–77.  The VE said that the individual could still perform the jobs even if he was found sitting catatonic at his desk for several minutes twice a day.  Tr. at 74–75.

2.    The ALJ's Findings

In his decision of February 28, 2012, the ALJ made the following findings of fact

and conclusions of law:

1.    The claimant last met the insured status requirements of the Social Security Act on June 30, 2011.

2.    The claimant did not engage in substantial gainful activity during the period from his alleged onset date of December 31, 2008 through his date last insured of June 30, 2011 (20 CFR 404.1571 *et seq.*).

3.    Through the date last insured, the claimant had the following severe impairments: degenerative disc disease of the lumbar spine status post decompression at L4–L5 and L5–S1; diabetes; neuropathy; history of evulsion injury to the left hand; obesity; attention deficit disorder; affective disorder; anxiety disorder; and personality disorder (20 CFR 404.1520(c)).

4.    Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5.    After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a). Specifically, the claimant can lift and carry up to 10 pounds occasionally; sit at least 6 hours and stand/walk a maximum of 2 hours in an 8-hour day; never climb ladders, ropes or scaffolds; occasionally perform other postural movements; occasionally do overhead reaching; frequently finger and handle with the left hand and must avoid concentrated exposure to extreme cold and all exposure to hazards. The claimant is further limited to simple routine repetitive tasks in a setting that does not require ongoing interaction with the public.

6.    Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

7.    The claimant was born on October 1, 1971 and was 39 years old, which is defined as a younger individual age 18–44, on the date last insured (20 CFR 404.1563).

8.    The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9.    Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.  Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569(a)).

11.  The claimant was not under a disability, as defined in the Social Security Act, from December 31, 2008, the alleged onset date, through June 30, 2011, the date last insured (20 CFR 404.1520(g)).

Tr. at 22–31.

II.  Discussion

Plaintiff alleges the Commissioner erred for the following reasons:

1)  the ALJ erred in failing to consider all of Plaintiff's impairments and their combined effect on his ability to work;

2)  the ALJ failed to properly evaluate Plaintiff's obesity as required by Social Security Ruling ("SSR") 02-1p; and

3)  the ALJ erred by not complying with the requirements of SSR 00-4p.

The Commissioner counters that substantial evidence supports the ALJ's findings and that the ALJ committed no legal error in his decision.

A.  Legal Framework

1.  The Commissioner's Determination-of-Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability."  42 U.S.C. § 423(a).  Section 423(d)(1)(A) defines disability as:

the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions.  *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting "need for efficiency" in considering disability claims).  An examiner must consider the following:  (1) whether the claimant is engaged in substantial gainful activity; (2) whether he has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[1] (4) whether such impairment prevents claimant from performing PRW;[2] and (5) whether the impairment prevents him from doing substantial gainful employment.  *See* 20 C.F.R. § 404.1520. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis.  If a decision regarding disability may be made at any step, no further inquiry is necessary.  20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can

---

[1]  The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity.  20 C.F.R. § 404.1525.  If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, he will be found disabled without further assessment.  20 C.F.R. § 404.1520(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria."  20 C.F.R. § 404.1526; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

[2]  In the event the examiner does not find a claimant disabled at the third step and does not have sufficient information about the claimant's past relevant work to make a finding at the fourth step, he may proceed to the fifth step of the sequential evaluation process pursuant to 20 C.F.R. § 404.1520(h).

find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if he can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20 C.F.R. Subpart P, § 404.1520(a), (b); SSR 82-62 (1982). The claimant bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that he is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981); *see generally Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (regarding burdens of proof).

2.    The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner [] made after a hearing to which he was a party." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the

12

Commissioner applied the proper legal standard in evaluating the claimant's case.  *See id.*; *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls*, 296 F.3d at 290 (*citing Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases de novo or resolve mere conflicts in the evidence."  *Vitek v. Finch*, 438 F.2d 1157, 1157–58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)).  Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence.  "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005).  Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings and that her conclusion is rational.  *See Vitek*, 438 F.2d at 1157–58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964).  If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision."  *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

B.    Analysis

1.    Discussion of Impairments

The ALJ found Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine status post decompression at L4–L5 and L5–S1; diabetes; neuropathy; history of evulsion injury to the left hand; obesity; attention deficit disorder; affective disorder; anxiety disorder; and personality disorder.  Tr. at 22.  Plaintiff

contends that the ALJ erred by failing to make findings about or discuss his alleged additional impairments of bilateral carpal tunnel syndrome, severe depression, restrictive lung disease, and obstructive sleep apnea. [Entry #5 at 12]. Plaintiff further contends that the ALJ failed to adequately explain the combined effects of Plaintiff's physical and mental impairments. *Id.* at 6. The Commissioner responds that the ALJ explicitly considered Plaintiff's combined impairments and, to the extent the ALJ left any impairments unaddressed, his reliance on the opinion of Plaintiff's treating physician discharged his obligation to consider the combined effects of Plaintiff's impairments. [Entry #13 at 5–7].

a.    Disputed Impairments

Plaintiff asserts that the ALJ failed to consider the following impairments: bilateral carpal tunnel syndrome, severe depression, restrictive lung disease, and obstructive sleep apnea. The Commissioner contends the ALJ expressly discussed Plaintiff's depression and carpal tunnel syndrome in his RFC analysis. [Entry #13 at 6]. Implicit is the Commissioner's argument is a concession that the ALJ did not address Plaintiff's alleged restrictive lung disease or obstructive sleep apnea.

In his summary of Plaintiff's hearing testimony, the ALJ referenced Plaintiff's statements that he had carpel tunnel syndrome, did not have the ability to make a fist with his left hand, did not use a keyboard because of his carpal tunnel, and suffered from depression. Tr. at 25. In his RFC analysis, the ALJ noted Dr. Michael's March 2011 treatment note indicating that Plaintiff suffered from severe depression. Tr. at 27. The ALJ further noted that Plaintiff's extensive pain medications made it difficult to assess

14

the credibility of his subjective complaints concerning his anxiety and depression. Tr. at 28. Finally, the undersigned notes that the ALJ found Plaintiff to have a severe affective disorder. Depression falls within the broad heading of affective disorders. Based on the foregoing, the undersigned finds that the ALJ gave specific consideration to Plaintiff's carpal tunnel syndrome and depression.

A review of the ALJ's decision demonstrates that he did not make any mention of Plaintiff's restrictive lung disease or obstructive sleep apnea. The question then becomes whether this omission by the ALJ warrants remand. The undersigned recommends a finding that it does not.

With regard to his diagnosis of obstructive sleep apnea, Plaintiff cites to a single record from Dr. Michael which states, "No doubt [Plaintiff] has significant restrictive lung disease because of his morbid obesity." [Entry #12 at 5 (citing Tr. at 324)]. The record also notes, however, that Plaintiff remained more concerned about his chronic pain complaint than his cardiac issue. *Id.* Dr. Michael did not opine about any functional limitations associated with Plaintiff's restrictive lung disease, and Plaintiff does not appear to have received any treatment for the condition. The burden of proof and production rests on Plaintiff to show limitations. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (noting burden of proof and production is on claimant at steps one through four of the sequential evaluation). For these reasons, the undersigned recommends a finding that any error by the ALJ in failing to address Plaintiff's restrictive lung disease was harmless. *See Mickles v. Shalala*, 29 F.3d 918, 921 (4th Cir. 1994) (affirming denial

of benefits where the ALJ erred in evaluating a claimant's pain because "he would have reached the same result notwithstanding his initial error").

With regard to his alleged obstructive sleep apnea, Plaintiff fails to cite to any records diagnosing the condition. [Entry #12 at 5]. While the record does contain references to a history of obstructive sleep apnea, *see, e.g.*, Tr. at 260, 282, it does not link Plaintiff's sleep apnea with any functional losses. Thus, the undersigned recommends a finding that any error by the ALJ related to Plaintiff's sleep apnea was likewise harmless.

Based on the foregoing, the undersigned recommends a finding that the ALJ's treatment of Plaintiff's individual impairments does not warrant remand.

b.    Combined Impairments

Plaintiff also asserts that the ALJ failed to properly consider the effect of his combined impairments. [Entry #12 at 5–6]. When, as here, a claimant has more than one impairment, the statutory and regulatory scheme for making disability determinations, as interpreted by the Fourth Circuit, requires that the ALJ consider the combined effect of these impairments in determining the claimant's disability status. *See Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989); *see also Saxon v. Astrue*, 662 F. Supp. 2d 471, 479 (D.S.C. 2009) (collecting cases in which courts in this District have reiterated importance of the ALJ's explaining how he evaluated the combined effects of a claimant's impairments). The Commissioner is required to "consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity." 42 U.S.C. § 423(d)(2)(B) (2004). The

16

ALJ must "consider the combined effect of a claimant's impairments and not fragmentize them." *Walker*, 889 F.2d at 50. "As a corollary, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments." *Id.*

Although Plaintiff contends the ALJ failed to consider the combined effects of Plaintiff's mental and physical impairments in the RFC determination, the ALJ's decision belies this argument. In the RFC determination, the ALJ stated, "[T]he undersigned has afforded the claimant a more restrictive residual functional capacity to address the combined effects of the claimant's impairments and to accommodate the claimant's subjective complaints." Tr. at 29. The undersigned finds this reference to Plaintiff's combined impairments sufficient under *Walker*. Furthermore, Plaintiff has offered no explanation of how more discussion of his combined impairments may have changed the outcome of the ALJ's analysis. For these reasons, the undersigned recommends a finding that the ALJ's RFC determination sufficiently addressed Plaintiff's combined impairments. *See Brown v. Astrue*, C/A No. 0:10-1584-RBH, 2012 WL 3716792, at *6 (D.S.C. Aug. 28, 2012) (finding that Fourth Circuit precedent issued after *Walker* suggested that *Walker* was not meant to be used as a trap for the Commissioner).

To the extent Plaintiff argues that the remainder of the ALJ did not properly evaluate the combined effect of Plaintiff's impairments at other steps in the sequential evaluation process, his argument is unavailing. When considering whether the ALJ properly considered the combined effect of impairments, the decision must be read as a whole. *See id.* ("Accordingly, the adequacy requirement of *Walker* is met if it is clear from the decision as a whole that the Commissioner considered the combined effect of a

claimant's impairments.") (citing *Green v. Chater*, 64 F.3d 657, 1995 WL 478032, at *3 (4th Cir. Aug. 14, 1995)).   Because the undersigned has determined that the ALJ sufficiently addressed Plaintiff's combined impairments in his RFC determination, the undersigned recommends a finding that it was not error for the ALJ to omit that discussion elsewhere in his decision.

### 2.    Compliance with SSR 02-1p

Plaintiff next argues that the ALJ failed to comply with SSR 02-1p because he did not adequately consider the effect of Plaintiff's obesity in the listing analysis or residual functional capacity assessment.  [Entry #12 at 6–8].  The Commissioner responds that the ALJ properly considered Plaintiff's obesity.  [Entry #13 at 7].

SSR 02-1p provides, in pertinent part, as follows:

Obesity can cause limitation of function. The functions likely to be limited depend on many factors, including where the excess weight is carried. An individual may have limitations in any of the exertional functions such as sitting, standing, walking, lifting, carrying, pushing, and pulling. It may also affect ability to do postural functions, such as climbing, balance, stooping, and crouching. The ability to manipulate may be affected by the presence of adipose (fatty) tissue in the hands and fingers. The ability to tolerate extreme heat, humidity, or hazards may also be affected.

. . .

The combined effects of obesity with other impairments may be greater than might be expected without obesity. For example, someone with obesity and arthritis affecting a weight-bearing joint may have more pain and limitation than might be expected from the arthritis alone.

. . .

As with any other impairment, we will explain how we reached our conclusions on whether obesity caused any physical or mental limitations.

SSR 02-1p.

Here, the ALJ found Plaintiff's obesity to be a severe impairment. Tr. at 22. However, Plaintiff asserts that the ALJ did not comply with SSR 02-1p because nowhere does he discuss, reference, or in any way indicate that he considered the effects of Plaintiff's obesity on his physical or mental impairments in the listing analysis. [Entry #12 at 7]. Specifically, Plaintiff contends that the ALJ should have considered obesity in his evaluation of whether Plaintiff met Listing 1.00B2b. *Id.* The regulation to which Plaintiff refers is a definition of the "inability to ambulate effectively" and not a listing under which a finding of disability may be made. Plaintiff has put forth no evidence to demonstrate that his obesity resulted in an inability to ambulate effectively. Plaintiff's argument regarding this regulation appears to stem from language in SSR 02-1p noting that obesity on its own may be found to be equivalent to a listed impairment. SSR 02-1p provides, as an example, that obesity causing an inability to ambulate effectively (as defined in 1.00B2b) may substitute for the major dysfunction of a joint due to any cause and result in a finding of disability under 1.02A or 101.02A. SSR 02-1p does not require that an ALJ specifically consider obesity whenever he evaluates a claimant's ability to ambulate. Even assuming such a requirement, Plaintiff has failed to demonstrate that his obesity impacted his ability to ambulate. Thus, the undersigned recommends finding that any error by the ALJ in discussing section 1.00B2b of the Listings was harmless.

To the extent Plaintiff argues the ALJ erred in not making a finding regarding Plaintiff's level of obesity under the Clinical Guidelines, the argument is unavailing. Plaintiff cites to no authority requiring that the ALJ make such a finding and SSR 02-1p

specifically notes that while the levels describe the extent of obesity, "they do not correlate with any specific degree of functional loss."

Finally, Plaintiff contends the ALJ erred by failing to discuss Plaintiff's obesity in the RFC analysis and failing to consider how its effects combined with Plaintiff's other impairments limited his ability to perform the function necessary to sustain gainful employment. [Entry #12 at 8]. However, nowhere in the administrative process has Plaintiff alleged that his obesity placed any limitations on his functional capacity. In his testimony, Plaintiff did not describe obesity as one of his impairments. Tr. at 48–51. A review of the administrative record demonstrates that Plaintiff did not allege obesity as an impairment in his Disability Reports. *See, e.g.*, Tr. at 175. The burden of proof and production rests on Plaintiff to show limitations. *Pass*, 65 F.3d at 1203 (noting burden of proof and production is on claimant at steps one through four of the sequential evaluation); *Russell v. Chater*, C/A No. 94–2371, 1995 WL 417576, at *3 (4th Cir. July 7, 1995) (noting a claimant must explain the basis of his theory as to how obesity limits his functional ability; speculation is not permitted).

As SSR 02-1p makes clear, conjecture such as Plaintiff now seeks is prohibited:

[W]e [the Commissioner] will not make assumptions about the severity or functional effects of obesity combined with other impairments. Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment. We will evaluate each case based on the information in the case record.

SSR 02-1p, available at 2002 WL 34686281, at *6.

For the foregoing reasons, the undersigned recommends finding that the ALJ did not err in his treatment of Plaintiff's obesity.

3.     VE Testimony

Finally, Plaintiff argues that the ALJ failed to comply with SSR 00-4p because he did not ask the VE about any possible conflict with the *Dictionary of Occupational Titles* ("*DOT*"). [Entry #12 at 8–9]. Plaintiff admits that the ALJ made the following statement to the VE: "If you give us an opinion that conflicts with information in the Dictionary of Occupational Titles, will you advise us of the conflict and the basis for your opinion?" Tr. at 68. The VE responded that he would. *Id.* However, Plaintiff asserts that this statement does not satisfy the requirements of SSR 00-4p. [Entry #12 at 9 (citing Tr. at 68)]. Plaintiff further asserts that the VE's testimony conflicted with the *DOT* because the hypothetical included restrictions to no ongoing interaction with the public and limited the use of one arm, but not the other. Plaintiff contends that because the *DOT* does not address these limitations, the VE's testimony was inconsistent with the *DOT*. *Id.*

Pursuant to SSR 00-4p, before relying on VE testimony to support a disability determination, an ALJ must identify and obtain a reasonable explanation for any "apparent unresolved conflict" between occupational evidence provided by a VE and information in the DOT. SSR 00-4p. The ALJ "will explain in the determination or decision" how he resolved the conflict and "must explain the resolution of the conflict irrespective of how the conflict was identified." *Id.*

Although Plaintiff asserts the VE's testimony was inconsistent with the *DOT*, he provides no legal authority to support his position. Rather, he concedes that the *DOT* "does not address the extent of ongoing interaction with the public in its description of

21

the requirements of the occupations." [Entry #12 at 10]. Because the *DOT* does not address whether a job requires ongoing interaction with the public, there is no apparent unresolved conflict between the VE's testimony and the *DOT* on this issue. *See Bilodeau v. Colvin*, No. 2:12-1298-CMC-BHH, 2013 WL 3880132, at *6 (D.S.C. July 26, 2013) (finding that where the plaintiff conceded the *DOT* did not address limitations in public interaction, there was no apparent conflict to resolve).

Plaintiff also argues that having different exertional limitations on separate upper extremities is not consistent with the *DOT*. [Entry #12 at 10]. This argument is likewise without legal authority and does not identify any statement in the *DOT* that conflicts with the hypothetical presented to the VE. The undersigned notes that the Commissioner's responsive argument appears to incorrectly assume that the ALJ limited the hypothetical individual to occasional overhead reaching with the left arm. [Entry #13 at 11]. The hearing transcript provides that the ALJ limited the hypothetical individual to occasional overhead reaching bilaterally. Tr. at 71, 73. However, this distinction is without significance in light of Plaintiff's failure to identify any apparent conflict between the VE's testimony and the *DOT*.

The undersigned recommends a finding that no apparent conflict existed between the VE's testimony and the *DOT*. Based on this recommendation, it is not necessary to determine whether the ALJ's directive to the VE to notify the tribunal of any conflict with the *DOT* violated SSR 00-4p. To the extent the directive was insufficient pursuant to SSR 00-4p, the undersigned recommends a finding that any error by the ALJ was harmless.

III.    Conclusion and Recommendation

The court's function is not to substitute its own judgment for that of the Commissioner, but to determine whether her decision is supported as a matter of fact and law.  Based on the foregoing, the undersigned recommends the Commissioner's decision be affirmed.

IT IS SO RECOMMENDED.

May 29, 2014                                          Shiva V. Hodges
Columbia, South Carolina                    United States Magistrate Judge

**The parties are directed to note the important information in the attached**
**"Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see*  Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).